UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DWAYNE S. MONTGOMERY,

      Plaintiff,

vs.

I. SANCHEZ, *et al.*,

      Defendants.

Case No. 1:13-cv-00247-RRB

<u>ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT
[DOCKETS 73, 75]</u>

## I.   PENDING MOTIONS

At **Docket 73**  Defendant I. Sanchez moved for summary judgment. At **Docket 75** Defendants H. B. Smith and S. W. Duncan also moved for summary judgment. Plaintiff Dwayne S. Montgomery has opposed both motions,[1] and Defendants have replied.[2] This matters being ripe for decision, they are submitted for decision on the moving and opposing papers without oral argument.[3]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the

---

[1] Docket 82.

[2] Docket 86 (I. Sanchez); Docket 89 (H. B. Smith and S. W. Duncan).

[3] LR 230(l).

ORDER REGARDING MOTIONS FOR  SUMMARY JUDGMENT
*Montgomery v Sanchez*, 1:13-cv-00247-RRB – 1

moving party is entitled to judgment in its favor as a matter of law.[4] Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[5] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact for trial.[6] The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. In order to show that a genuine issue of material fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint.[7] Material facts are those that may affect the outcome of the case.[8] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[9] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

---

[4] Fed. R. Civ. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[5] Fed. R. Civ. P. 56(e).

[6] *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002).

[7] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–49 (1986).

[8] *Id.*

[9] *Id.*

ORDER REGARDING MOTIONS FOR  SUMMARY JUDGMENT
*Montgomery v Sanchez*, 1:13-cv-00247-RRB – 2

judge, [when] he is ruling on a motion for summary judgment."[10] The evidence of the non-moving party is to be believed and all justifiable inferences are drawn in his favor.[11] The moving party has the burden of showing there is no genuine issue of material fact; therefore, he or she bears the burden of both production and persuasion.[12] The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.[13] There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[14]

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses.[15] Instead, it generally accepts as true statements made under oath.[16] However, this rule does not apply to conclusory statements unsupported by underlying facts,[17] nor may the court draw unreasonable inferences from

---

[10] *Id*. at 255.

[11] *Id.*

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

[13] *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010); *see Celotex*, 477 U.S. at 325.

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[15] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[16] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005).

[17] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

the evidence.[18] "To survive summary judgment, a plaintiff must set forth non-speculative facts, not sweeping conclusory statements."[19]

## III.  BACKGROUND/ISSUES PRESENTED

After screening, the Court determined that Montgomery properly pled two claims: (1) an Eighth Amendment excessive force claim against Defendants Smith and Sanchez; and (2) an Eighth Amendment failure to protect claim as against Defendants Smith and Duncan.[20]

The incident complained of occurred on August 14, 2010, while Montgomery was incarcerated at Kern Valley State Prison ("KVSP"). In his Complaint Montgomery alleges Defendant Sanchez used unnecessary and excessive force in spraying Montgomery with pepper spray without provocation or justification. Montgomery further alleges that Defendant Smith also used excessive force in spraying Montgomery with pepper spray. Finally, Montgomery alleges that Defendants Smith and Duncan failed to protect Montgomery from the attack by his cell-mate, Ivan Frost. Although for the most part the facts in this case are undisputed, this Court views the facts in the light most favorable to Montgomery.

---

[18] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir. 1988).

[19] *Calfasso, U.S. ex rel. v. Gen Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1061 (9th Cir. 2011).

[20] Docket 6.

1. Montgomery and Frost were housed together in the same cell from August 3, 2010, through August 14, 2010.[21]

2. Prior to being housed with inmate Frost, Montgomery had interactions with Frost, and their relationship had been cordial.[22]

3. During the nine-month period between meeting Frost in December 2009 and being housed with him on August 3, 2010, although Montgomery would see Frost daily, they had never had any conflicts with each other.[23]

4. No compatibility chronos were in place between Montgomery and Frost; nor was Frost listed, designated, or recorded as Montgomery's enemy.[24]

5. Montgomery celebrated his birthday on August 11, 2010, by making a meal and sharing it with Frost, and his relationship with Frost was cordial.[25]

6. On August 13, 2010, Frost became hostile towards Montgomery because he accepted a food tray prepared by Special Needs Yard (SNY) inmates, to which Frost was opposed.[26]

---

[21] Montgomery Deposition, 32:12–34:5 [Defendants' Motion for Summary Judgment, Docket 75-3].

[22] *Id.*, 15:23–16:11.

[23] *Id.*, 33:5–24.

[24] *Id.*

[25] *Id.*, 49:21–50:5.

[26] *Id.*, 50:5–52:17.

ORDER REGARDING MOTIONS FOR  SUMMARY JUDGMENT
*Montgomery v Sanchez*, 1:13-cv-00247-RRB – 5

7. After breakfast on August 13, 2010, Montgomery spoke with Smith, stating, "look, man, this dude is threatening me.  I got to get a cell move, please.  I need to get out of here because it's going to get hostile.  He's going to get violent."[27]

8. Smith does not recall having any conversation with Montgomery regarding a cell move at any point on August 13, 2010.[28]

9. At no point prior or subsequent to Montgomery's alleged discussion with Smith after breakfast on August 13, 2010, did Montgomery speak with Smith concerning his fears about his safety, or to request a cell move.[29]

10. On August 14, 2010, Frost again became hostile towards Montgomery because Montgomery accepted another food tray prepared by SNY inmates.[30]

11. Between August 7 and August 14, 2010, Frost neither spoke to any of the Defendants or any other correctional officer to request a cell re-assignment.  Frost instead always remained sitting and quiet, and never spoke to either Smith or Sanchez.[31]

12. Between August 7 and August 14, 2010, Smith neither personally observed any hostility between Montgomery and Frost, nor spoke with Montgomery regarding any safety concerns; Smith did not receive any objective information, from any source that would have

---

[27] *Id.*, 54:2–6.

[28] Declaration of Defendant Smith in Support of Motion for Summary Judgment, ¶ 2 [Defendants' Motion for Summary Judgment, Docket 75-6].

[29] Montgomery Deposition, 56:3–227:18.

[30] *Id.*, 79:2–7.

[31] *Id.*, 85:4–86:2.

lead him to infer that Montgomery faced a substantial risk of serious harm by his continued housing with Frost.[32]

13. On August 14, 2010, Montgomery and Frost got into a heated argument, and Frost informed Montgomery that he either had to move on his own or Frost would remove him.[33]

14. Prior to the assault, in an attempt to get the attention of the guards, Montgomery started falsely yelling "man down," to which Officer Soto responded, followed a few minutes later by Sanchez. Although Montgomery informed both officers of his fear of being assaulted, both left without taking any action.[34]

15. Subsequently, Montgomery was assaulted by Frost:  When Frost charged him, although Montgomery threw up his hands, Frost punched him in the nose and left eye, knocking him out.[35]

16. After Montgomery regained consciousness, bleeding with blood on his shirt and the cell floor, he got up and was holding on to the cell door.[36]

---

[32] Smith Declaration, ¶ 3.

[33] Declaration of Ivan Frost, Docket 1, p. 20.

[34] Montgomery Deposition, 82:21–84:11; 108:9–109:5.

[35] Montgomery Deposition, 85:4–88:19; Frost Declaration, *supra*.  The Court notes that, as presented in the declarations before the Court, the time lapse between the time that Soto and Sanchez left and the assault occurred ranges between as little as 10, but not more than 50 minutes.

[36] *Id.*, 88:17–89:23.

ORDER REGARDING MOTIONS FOR  SUMMARY JUDGMENT
*Montgomery v Sanchez*, 1:13-cv-00247-RRB – 7

17. At approximately 10:20 a.m., Smith was notified by Control Booth Officer Pelayo to report to A-Section, Cell Number 107 because Pelayo believed that Montgomery and Frost, the inmates housed therein, were fighting.[37]

18. In response to Officer Pelayo's notification, Smith, accompanied by Sanchez, immediately went to A-Section, Cell Number 107 to investigate.[38]

19. When Sanchez arrived at the cell, he looked into the cell and directed both Montgomery and Frost to "prone out."[39]

20. At the time Sanchez ordered Montgomery to "prone out," Montgomery was at the front of the cell, about three feet from the door, and Frost was all the way at the back, on the top bunk.[40]

21. In response to Sanchez's order, Montgomery dropped to his knees and Frost jumped down from the top bunk.[41]

22. At that time, based upon his observation of the movements made by Montgomery and Frost, the visible blood in the cell and on Montgomery's person, and both inmates' failure to comply with orders to assume a prone position on the floor, Smith believed that the inmates were or had been engaged in a fight.[42]

---

[37] Smith Declaration, ¶ 4.

[38] *Id.*, ¶ 5.

[39] Montgomery Deposition, 89:24–90:17, 95:5–8.

[40] *Id.*, 97:14–98:2.

[41] *Id.*, 90:17–91:13.

[42] Smith Declaration, ¶ 6.

ORDER REGARDING MOTIONS FOR  SUMMARY JUDGMENT
*Montgomery v Sanchez*, 1:13-cv-00247-RRB – 8

23. Sanchez then opened the food port and sprayed pepper spray through the food port.[43]

24. When Sanchez sprayed the pepper spray, Montgomery was still on his knees, not in a prone position; the spray hit Montgomery directly in the face.[44]

25. When Sanchez sprayed the pepper spray, Frost was in the process of jumping down from his bunk onto the table or a stool.[45]

26. When Montgomery turned his head away from the pepper spray, he saw Frost still moving and attempting to crawl underneath under the cell bunks; Montgomery was then hit again with pepper spray in the back of his head.[46]

27. When Smith was trying to spray Frost he hit Montgomery in the back of the head because Montgomery was blocking the way.[47] Based upon his perception that Montgomery and Frost were fighting and both inmates' failure to comply with orders to assume a prone position on the cell floor, coupled with the risk that they may further injure or kill one another, Smith used his pepper spray striking both Montgomery and Frost in their upper body and face areas.[48]

28. When the pepper spray was deployed, Frost was not in a prone position.[49]

---

[43] Montgomery Deposition, 90:17–22.

[44] *Id.*, 91:19–92:7.

[45] *Id.*, 95:3–96:2.

[46] Montgomery Deposition, 91:1–6; 92:13–93:16.

[47] *Id.*, 94:4–95:17.

[48] Smith Declaration, ¶ 7.

[49] *Id.*, 95:3–96:2.

29. While the pepper spray was being deployed, Montgomery did not see Smith.[50]

30. After being pepper sprayed, both Montgomery and Frost complied with the order to prone out.[51]

31. Between August 7, 2010, and August 14, 2010, Duncan did not personally observe any hostility between Montgomery and Frost, nor did he receive any objective information, from any KVCP employee that would have led him to infer that Montgomery faced a substantial risk of serious harm by his continued housing with Frost.[52]

32. Prior to the assault, Montgomery never personally addressed any safety concerns with Duncan.[53]

## IV.   DISCUSSION

Initially the Court notes that to a significant extent Montgomery attempts to attack the credibility of the Defendants. As does Montgomery, this Court views with concern and a significant degree of displeasure the marked discrepancies between the facts as stated by the Defendants in the internal rules violation proceeding and the facts as set forth in the declarations filed in this proceeding. That concern notwithstanding, as noted above, in ruling on the pending motions the Court views the facts in the light most favorable to Montgomery.  In so doing, the Court accepts the facts as presented by Montgomery to the

---

[50] *Id.*, 94:5–94:9.

[51] Smith Declaration, ¶ 8.

[52] Declaration of Defendant Duncan in Support of Motion  for Summary Judgment, Duncan Declaration, ¶ 2 [Defendants' Motion for Summary Judgment, Docket 75-5].

[53] Duncan Declaration, ¶ 3.

extent those facts are supported by competent, admissible evidence.[54] Likewise, the Court disregards any facts asserted by Defendants unsupported by competent evidence, or to the extent those facts are controverted by competent evidence.

The discrepancy between the rules violation reports and the facts as asserted by the Defendants in their pending motions relate to whether or not there was a "fight" between Montgomery and his cell-mate, Frost. It is undisputed that there was an altercation, as a result of which Montgomery was injured and called for assistance. Whether or not Montgomery was an active or passive participant in that altercation is irrelevant to the issues before this Court:  (1) did Sanchez and Smith use excessive force in using pepper spray;[55] and (2) did Duncan and Smith fail to protect Montgomery from the attack on him by Frost. The Court will address those issues *in seriatim*.

### Use of Pepper Spray

The law in this Circuit is clear that the use of chemical agents in quantities greater than necessary to restore order or for the sole purpose of infliction of pain violates the Eighth Amendment.[56] It is equally as clear that the use of pepper spray in small amounts

---

[54] In so doing, the Court considered the objections to evidence filed by Defendants Smith and Duncan at Docket 90.  Because the Court does not rely on the proffered evidence to which an objection has been raised, to the extent it may relate to a contested issue the Court finds it unnecessary to separately rule on those objections.

[55] Because the constitutional prohibition against the use of excessive force is clearly established, qualified immunity is not an available defense.  *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (prohibition against excessive use of pepper spray clearly established).  Accordingly, the Court declines to entertain that defense.  Instead, as did the Ninth Circuit in *Furnace*, this Court reviews the facts in this case under the excessive force criteria.

[56] *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

may be a necessary technique for the control of prisoners if a prisoner refuses after adequate warning to comply with the lawful order of a guard, or in any other situation presenting a reasonable possibility that slight force will be required.[57]

> We have previously identified five factors set forth in *Hudson* to be considered in determining how the above question should be answered; namely, (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.[58]

In resolving the issues presented in this case, the Court must apply the five *Hudson–Furnace* factors. First, as did the Ninth Circuit in *Furnace*, this Court finds that the injuries caused by the use of the pepper spray were moderate.[59] Second, there is no evidence in the record that the amount of pepper spray used, one burst by each officer, was excessive,[60] or that, under the circumstances, a less debilitating means to compel compliance was available. Thus, the outcome in this case depends on the necessity for using pepper spray.

---

[57] *Id*. (citing *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979)).

[58] *Id.* (quoting *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (internal quotation marks omitted)).

[59] *Id.* at 1029.  Indeed, Montgomery does not even allege that his injuries were severe, let alone present any evidence.  Furthermore, in his deposition Montgomery acknowledged that he was provided medical care, which in the absence of any contrary competent evidence the Court assumes was adequate.

[60] *Compare Id.* at 1026 (officers sprayed inmate for about one minute, emptying more than one canister).  Although Montgomery contends in his opposition that both Sanchez and Smith emptied their canisters, that conclusory statement is neither supported nor contradicted by any evidence in the record.  If the evidence should show an excessive amount was used, it could add weight to Montgomery's claim.

The Court first addresses the claim against Sanchez. In this case, unlike *Furnace*, it is undisputed that at the time Sanchez pepper sprayed him, Montgomery had been ordered to "prone out," an order he had not yet obeyed. The critical issue raised is whether or not Montgomery was given sufficient time to comply with that order.

Initially the Court notes that Sanchez did not provide his own declaration in support of his motion. Instead, Sanchez relies solely upon what he perceives to be the lack of evidence to support Montgomery's claims. This Court is limited to the evidence in the record before it. After a careful and thorough review of Montgomery's deposition, and the declarations of Smith, Duncan, and Adams, the evidence, as opposed to the conclusory statements, it is apparent that the "fight" was over and does not conclusively establish that Montgomery was given sufficient time to comply with the order to "prone out."[61] A properly instructed jury could plausibly find under the facts as presented in the record before this Court that Montgomery did not have sufficient time to fully comply with the "prone out" order before Sanchez pepper sprayed him, and that Sanchez did so for reasons other than to restore order or discipline.[62] Even if as Sanchez argues, the facts fail to show that he

---

[61] The Court notes one additional factor considered as important in *Furnace* that does not appear to be present in this case. The *Furnace* court noted that the CDCR policies in effect in that case required that the correctional officer verbally warn an inmate before using pepper spray. The only evidence in this case is that the use of pepper spray was not only consistent with CDCR policy, but that inmates are warned of the consequences of a failure to comply. Declaration of William Adams, Docket 73-4. While not dispositive, the failure to provide a warning that pepper spray would be used in the event of noncompliance with the order tends to add weight to Montgomery's claim that use of pepper spray was unnecessary.

[62] The undisputed facts show that when Montgomery was given the order, Montgomery was standing. At the time Sanchez sprayed Montgomery with the pepper spray Montgomery was on his knees. This is clearly indicative that Montgomery was at
(continued...)

acted maliciously and with the specific intent to harm, Sanchez overlooks that *McMillian* used the disjunctive "or" with respect to the necessity to restore order.[63] In short, the evidence presented in support of Sanchez's motion falls far short of establishing the lack of a triable issue of fact with respect to the necessity for using pepper spray.[64] Accordingly, viewed in light of *Furnace*, Sanchez is not entitled to summary judgment in his favor.

On the other hand, Montgomery's claim as against Smith fails under an independent basis. The undisputed evidence is that in using his pepper spray, Smith was attempting to spray Frost, not Montgomery. Montgomery does not challenge the propriety of the use of pepper spray on Frost. While it may be possible for a jury to find that in spraying Montgomery Smith was negligent or even possibly grossly negligent, under the facts as presented no properly instructed, rational jury could find that Smith did not act in a good-faith effort to maintain or restore discipline, or that, with respect to Montgomery, he applied the pepper spray maliciously and sadistically to cause harm. Accordingly, Smith is entitled to judgment in his favor on this count.

---

[62](...continued)
least in the process of complying with the order.  Furthermore, given the undisputed facts regarding the relative positions of Montgomery and Frost and their actions in response to the order, it was clear that the fight was over and neither prisoner posed a safety threat to either themselves or the officers.

[63] *McMillian*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21(1986)).

[64] Given the facts concerning the prior encounter between Sanchez and Montgomery when Montgomery falsely cried wolf, a jury might infer that upon his return Sanchez was mad and intended to punish Montgomery.  An inference that not only tends to support both of the independent prongs of the *McMillian* test, but would also add weight to a finding that the use of pepper spray was unnecessary.

*Failure to Protect*

The gravamen of this claim is that Smith and Duncan failed to protect Montgomery from being assaulted by Frost. The law is clear that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."[65]

> The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is objectively, sufficiently serious and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference. [D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.[66]

The Supreme Court has further noted that deliberate indifference entails a stringent standard of fault, requiring that the actor disregarded a known or obvious consequence of the actor's action or inaction.[67] That is "the defendant knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it."[68] The question of deliberate indifference should go to the jury if any rational factfinder could find the requisite mental state.[69]

---

[65] *Farmer v. Brennan*, 511 U.S. 825, 823 (1994) (internal quotation marks and citation omitted); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*).

[66] *Hearns, supra* (alterations and omissions in the original) (citations and internal quotation marks omitted).

[67] *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006).

[68] *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (alterations in the original) (internal citations and quotation marks omitted).

[69] *Id*.

The record before this Court is devoid of any evidence that Frost had a history of violent acts directed at or assaulting fellow prisoners. There is no evidence in the record indicating that there was any hostility or animosity between Montgomery and Frost prior to the day immediately preceding the attack, let alone any specific threat. No officer observed any threatening, belligerent, or otherwise hostile actions by Frost.  Furthermore, by his own admission, Montgomery had been engaged in a heated argument with Frost, a mutual two-sided encounter. More importantly, however, is the fact that less than an hour preceding the attack, Montgomery, like the child who cried wolf, had falsely raised the "man down" alarm. While one might surmise that Montgomery had a real, subjective fear for his safety, there is no objective evidence to support a finding that either Smith or Duncan disregarded a known or obvious risk of harm to Montgomery, or that the altercation was a result of their inaction. The evidence when viewed in the light most favorable to Montgomery falls far short of establishing that either Smith or Duncan acted with deliberate indifference to Montgomery's safety.  Thus, both are entitled to judgment in their favor on this claim.

**V.     ORDER**

Based upon the foregoing:

1. The Motion for Summary Judgment by Defendant Illich Sanchez at **Docket 73** is hereby **DENIED**.

2. The Motion for Summary Judgment by Defendants H. B. Smith and S. W. Duncan at **Docket 75** is hereby **GRANTED**. The Complaint on file herein as against Defendants H. B. Smith and S. W. Duncan  is hereby **DISMISSED** in its entirety with prejudice.

**IT IS SO ORDERED** this 29th day of May, 2015.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE