# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE S. MONTGOMERY,<br><br>             Plaintiff,<br><br>     v.<br><br>I. SANCHEZ,<br><br>             Defendant.<br>_____/ | Case No. 1:13-cv-00247-LJO-DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS FOLLOWING EVIDENTIARY HEARING ON EXHAUSTION OF ADMINISTRATIVE REMEDIES |

Plaintiff Dwayne S. Montgomery, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 19, 2013.

The Court held an evidentiary hearing on the issue of exhaustion on October 7, 2015. Plaintiff appeared on his own behalf. Thomas Feher appeared on behalf of Defendant Sanchez.

The Court now issues these Findings and Recommendations on the issue of whether Plaintiff exhausted the available administrative remedies as to the claims presented in this action.

**A.     PROCEDURAL HISTORY**

On September 18, 2013, the Court found that the complaint stated an Eighth Amendment excessive force claim against Kern Valley State Prison ("KVSP") Correctional Officers H.B. Smith and I. Sanchez, and an Eighth Amendment failure to protect claim against Correctional Officers Smith and S.W. Duncan.

///

///

1  Defendants filed a motion to dismiss for failure to exhaust all claims on March 28, 2014.
2 On April 22, 2014, the Court converted the motion into a motion for summary judgment. The
3 Court denied the motion on August 12, 2014, finding the existence of a dispute of material fact as
4 to whether Plaintiff filed a grievance on August 23, 2010.

5  Defendants filed a motion for an evidentiary hearing to resolve the disputed factual issues
6 on October 1, 2014. The Court granted the motion on October 31, 2014, and stated that it would
7 hold an evidentiary hearing on the first day of trial, prior to empanelment of a jury.

8  On April 3, 2015, Defendants filed a motion for summary judgment on the merits.

9  On June 1, 2015, the Court granted the motion as to Defendants Smith and Duncan.
10 Summary judgment was denied as to Defendant Sanchez.

11  On September 1, 2015, the Court granted Defendant Sanchez's request for an earlier
12 evidentiary hearing. Albino v. Baca, 747 F.3d 1162, 1170-1171 (9th Cir. 2014).

13  The October 7, 2015, evidentiary hearing was limited to issues surrounding Plaintiff's
14 August 23, 2010, inmate grievance. Specifically, testimony related to (1) whether Plaintiff filed
15 an August 23, 2010, grievance; (2) whether the grievance was intercepted and destroyed; and (3)
16 whether Defendant Sanchez threatened Plaintiff so as to dissuade him from filing additional
17 grievances.

18 **B.     ALLEGATIONS IN COMPLAINT**

19  Plaintiff alleges that on August 14, 2010, Inmate Frost, his cellmate at KVSP, assaulted
20 him and knocked him unconscious. When Plaintiff regained consciousness, he began banging on
21 the cell door and yelling, "Mandown!" Defendant Sanchez came to the cell door and ordered
22 Plaintiff and Frost to prone out on the floor. As they were complying with Sanchez's commands,
23 Sanchez opened the food port on the cell door, and, without provocation, sprayed Plaintiff in the
24 face with pepper-spray. As Plaintiff was completely proned out on the floor, former Defendant
25 Smith sprayed him a second time. Other officers arrived and Plaintiff was handcuffed and taken
26 to the medical clinic for treatment of his injuries.

27 ///
28 ///

C.  **LEGAL STANDARD**

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings. Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

D.  **DISCUSSION**

  1.  *Prior Findings*

In the Court's August 12, 2014, order denying the motion for summary judgment, the Court found that it was undisputed that Plaintiff did not receive a decision at the Third Level of Review for claims related to the August 2010 assault. As the Court noted, after Plaintiff was transferred to California State Prison-Los Angeles County ("Lancaster"), he filed an appeal that raised the issues presented in his complaint. The appeal was received on March 10, 2011. It was cancelled at the Second Level on March 15, 2011, because the time limits for submission had not been met.

///

///

Plaintiff appealed the cancellation of the appeal on June 20, 2011. The appeal was received on August 9, 2011. On August 10, 2011, the appeal was rejected at the First Level because it was improperly submitted with dividers and tabs. Plaintiff did not pursue this matter any further at any level. ECF No. 49, at 7-8.

Plaintiff relied, however, on an appeal he contends he submitted on August 23, 2010, which raised the issues related to the assault. He alleges that the appeal was "intercepted and destroyed" by colleagues of Defendants, and that he was later threatened by Defendant Sanchez. Plaintiff contends that Defendant Sanchez made reference to the appeal, but told Plaintiff that it never reached its destination.

The Court found that Plaintiff's allegations, if accepted as true, excuse the exhaustion requirement. Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010).

2.  *Findings After Evidentiary Hearing*[1]

At this point, the burden is on Plaintiff to demonstrate that he had some reason that excused exhaustion.

Plaintiff testified that it took about nine days for him to recover from his injuries after the August 14, 2010, assault. Plaintiff completed the 602 on August 23, 2010, and signed it and mailed it on the same day. At that time, KVSP was on lockdown, so he could only place the envelope in the cell door for collection. Plaintiff was in Facility D, Building 8, Cell 116. Plaintiff stated, "And they came and picked up the mail and that was the last time I seen the 602."

Plaintiff testified that he had to type two copies because he did not have access to the law library to make copies. He typed a personal copy for himself and a copy that he sent to the appeals coordinator.

///

---

[1] In Albino, the Ninth Circuit held that "[i]f a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 188-190 (1936) (subject-matter jurisdiction); Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139-1140 (9th Cir. 2004) (venue); Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987) (personal jurisdiction)." Albino, 747 F.3d at 1170-1171. In McNutt, the Court indicated it may "inquire into the facts as they really exist." McNutt, 298 U.S. at 184. In Lake, the Court stated it "has the discretion to evidence at a preliminary hearing in order to resolve any questions of credibility or fact." Lake, 817 F.2d at 1420.

1 Plaintiff testified that the next time that he had any idea about the 602 was when Defendant
2 Sanchez "accosted" him at his cell door, Facility D, Building 1, Cell 112, on September 12, 2010.
3 According to Plaintiff, Defendant Sanchez told him that he read his complaint and that "it did not
4 reach its destination." Defendant Sanchez also told him that he has friends, and that any 602 that
5 Plaintiff files at KVSP will not get anywhere.

6 Based on Plaintiff's understanding of how the mail is collected and sorted, he believes that
7 maybe an officer on first watch intercepted the 602 and "just didn't send it."

8 Plaintiff next took his personal copy and mailed it to Robert Steven Martin, an attorney
9 who assisted Plaintiff with his post-conviction filings. Plaintiff sent it as legal mail so that no one
10 would look at it, as opposed to sending it directly to his sister, Diane Owens. Mr. Martin
11 subsequently sent it to Ms. Owens.[2]

12 Plaintiff further testified that when Defendant Sanchez told him that "there was no need to
13 pursue it," Plaintiff just wanted to stay clear of Defendant Sanchez and avoid problems. Plaintiff
14 continued to have problems with Defendant Sanchez, who searched his cell regularly. In fact,
15 Plaintiff testified that Defendant Sanchez confiscated a hot pot that Plaintiff had received in a
16 package and he had to send a 602 to the property officer.

17 After August 2010 and before he left KVSP, Plaintiff filed two 602s. One related to the
18 hot pot and the other related to religious prayer oil. The appeals were received and rejected.

19 During this time, Plaintiff testified that he met with Lt. Henderson in connection with the
20 Rules Violation Report he received after the August 2010 assault. Plaintiff testified that he told
21 Lt. Henderson about the 602, and Lt. Henderson told him that it was probably in the appeals
22 process. Lt. Henderson asked Plaintiff where he sent the appeal, and Plaintiff told him that he sent
23 it to the appeals coordinator.

24 Plaintiff also spoke about the 602 with Sgt. Duncan on September 3 or 4. Sgt. Duncan
25 approached Plaintiff and asked him if he had a problem with him. Sgt. Duncan told Plaintiff that

---

[2] Defendants object to the declaration of Ms. Owens, submitted by Plaintiff in support of his opposition to the motion for summary judgment. The Court need not rule on the objection because it is not relying on her testimony in making this decision. There also appears to be a discrepancy in Plaintiff's description of mailing his personal copy, or possibly a misunderstanding by the Court. In any event, the exact path of Plaintiff's personal copy is not relevant to the Court's decision.

1   he had submitted a 602 alleging that he did something, and Plaintiff explained that the problem
2   was with Defendant Sanchez, not Sgt. Duncan.

3   Plaintiff left KVSP on December 3, 2010, and went to Lancaster.  He testified that once he
4   got there, felt safe and got his property, he submitted a new 602 on January 22, 2011.  Plaintiff
5   testified that he did not provide an explanation as to why it was late because he had so many
6   things on his mind, but admits that he should have done so.  After it was rejected as untimely,
7   Plaintiff filed an appeal addressing the untimeliness on April 1, 2011.  The appeal was rejected on
8   August 20, 2011, and although Plaintiff had an opportunity to resubmit the appeal, he did not.
9   Plaintiff testified that he believed resubmitting the appeal would be fruitless because his appeals
10  kept getting denied.

11  Plaintiff admitted that he has filed about one hundred 602s in the past seven or eight years.
12  In his experience, most appeals get a response in three to six weeks.  Plaintiff went for about four
13  months at KVSP prior to his transfer without a response.  During that time, he filed two other
14  appeals, one of which was related to Defendant Sanchez's confiscation of a hot pot.

15  Officer Cranston was working the Third Watch with Officer Ballesteros in Facility D,
16  Building 8, on August 23, 2010.  When working with a female officer, such as Officer Ballesteros,
17  Officer Cranston generally takes the upper level for mail pick up, and the female officer takes the
18  lower level.  After the mail is collected, he places it into a mail bag, which he then closes using the
19  drawstring, and delivers it to the control officer.  On August 23, 2010, there would have been no
20  reason for him to open up, or destroy, any mail, and he has never done so at any other time.  He
21  also did not confiscate or redirect any mail on August 23, 2010, and he has never done so at any
22  other time.  Officer Cranston did not notify any officers of a staff complaint, and he has never
23  done so.

24  Officer Ballesteros testified that she was working in Facility D, Building 8, on August 23,
25  2010. On the evening of August 23, 2010, she would have collected the mail at Cell 116.  She
26  never destroyed, removed or transferred any mail that evening, nor has she done so at any other
27  time.  Officer Ballesteros further testified that she has never notified a staff member of mail that
28  ///

she had seen.  She does not read the mail and she does not have any knowledge of, or relationship with, Defendant Sanchez.

Officer Pitts testified that he was working First Watch on August 23, 2010.  He explained that after the mail is collected, it is delivered to his control booth.  He opens the bag and sorts the mail into three groups- stamped mail, indigent mail and institutional mail (which includes 602s).  He opens all the mail and sometimes reads the 602s to determine if any immediate harm exists that needs to be addressed.  If there are no threats, he stamps it, places it back in the U-Save envelope, places it in the mail bag, seals the mail bag and drops the bag down to Search and Escort.  He has never removed or destroyed a 602, nor has he ever redirected a 602.  He has no personal relationship with Defendant Sanchez and he has never notified him, or any other officer, of a 602 filed against him.

Sgt. Duncan testified that in August 2010, he worked in Facility D.  He does not recall ever learning in advance of a 602 filed against him from a staff member.  He has never intercepted or destroyed a 602, and he has never intimidated an inmate so as to discourage the inmate from filing a 602.  He has never learned of a 602 in advance from another staff member.

Finally, Defendant Sanchez testified that he was working in Facility D, Building 7, from August 2010 through December 2010.  He was off on August 23 and 24, 2010.  He did not socialize with Officers Pitts or Ballesteros, nor did he have a friendship with Officer Cranston.

On September 12, 2010, Defendant Sanchez testified that he was working Second Watch in Facility D, Building 7.  On that day, he never spoke with Plaintiff, who was in Building 1, for any reason, and he did not speak to him about a 602.  He further testified that from August 2010 through December 2010, he never took retaliatory action against an inmate for filing a 602, and he was never informed by another staff member that a 602 had been filed against him.  During that time, he did not know that Plaintiff had filed a 602 against him.

Based on this testimony, the Court finds that Plaintiff has not carried his burden of showing that he filed a 602 on August 23, 2010, that the appeal was intercepted, or that he was threatened by Defendant Sanchez.  Plaintiff presents only his testimony that he filed the 602 on August 23, 2010, but when viewed in conjunction with the remaining testimony and evidence, his

statement is not credible. Most importantly, Plaintiff wholly failed to mention the August 23, 2010, appeal, or explain why the January 2011 appeal was untimely in his January 2011 appeal, stating that these facts slipped his mind. Certainly, for an inmate who has filed dozens of appeals and knows the process well, it is unlikely that he would have omitted seemingly key facts from his January 2011 appeal.

Only after the January 2011 appeal was rejected as untimely did Plaintiff raise his contention that he filed an appeal on August 23, 2010. It is also curious that Plaintiff's personal copy, which he states he created at the same time as the appeal that he mailed, references Cell 118. Plaintiff was in Cell 116 on August 23, 2010.[3]

Additionally, Plaintiff testified that he spoke with both Lt. Henderson and Sgt. Duncan about his August 23, 2010, appeal. This is the first time that Plaintiff has identified a conversation about the appeal with Lt. Henderson,[4] and Sgt. Duncan denied ever having such a conversation with Plaintiff.

Plaintiff also testified that he did not know the name of the officer who picked up the appeal, but refers to the officer as "him." RT 43:16-17. Officer Ballesteros, however, who testified that she would have been the one to pick up mail from Plaintiff's cell on August 23, 2010, is a woman.

Plaintiff also admits that he does not know what happened to the appeal, and that his belief that a First Watch officer interfered with it is "all speculation." RT 19:18. Indeed, Third Watch Officers Cranston and Ballesteros and First Watch Officer Pitts testified that did not interfere with Plaintiff's appeal in any way on the night of August 23, 2010. There is no evidence of any type of relationship between Defendant Sanchez and the officers on First and Third Watch on August 23, 2010.

Further undermining Plaintiff's contention that he filed this appeal, as well as his contention that he was threatened and intimidated, is the fact that although Plaintiff knows that a

---

[3] The appeal is attached as Exhibit B to Plaintiff's opposition. ECF No. 39, at 25-27. It was also submitted during the hearing as Exhibit 22.

[4] Plaintiff admitted that he did not identify Lt. Henderson in discovery or during his deposition. RT 41:13-23.

8

response is usually received anywhere from three to six weeks, Plaintiff remained at KVSP for almost four months without receiving a response. He contends that Defendant Sanchez threatened him in September 2010, and suggests that he did not file any additional appeals because he did not want any other problems. However, Plaintiff did in fact file an appeal against Defendant Sanchez, after the alleged threat, related to a property issue. This completely undermines Plaintiff's testimony that he did not file any more appeals because he was intimidated by Defendant Sanchez's alleged threat.

As to the threat itself, Defendant Sanchez was not working in the building where Plaintiff was housed on September 12, 2010, when Plaintiff states that Defendant Sanchez came to his cell. Defendant Sanchez testified that he did not go to Plaintiff's building to speak with Plaintiff on September 10, 2010. He also testified that he has never learned in advance of a 602 filed against him through staff.

Even if, however, the Court found Plaintiff credible, he admits that he did not complete the exhaustion process at Lancaster when given the opportunity to do so. After his appeal was rejected in August 2011, Plaintiff did not make the required corrections and resubmit the appeal. He testified that he did not resubmit the appeal because he believed it would be fruitless, as all of his appeals had been denied. Plaintiff's belief, alone, however, is not sufficient to demonstrate that administrative remedies are unavailable. Ellis v. Cambra, 2005 WL 2105039, *5 (E.D.Cal. 2005) ("[I]f there is a process available, it must be utilized, regardless of how tiresome or trying.") (citing Porter v. Nussle, 534 U.S. 516, 524 (2002).

The fact remains that Plaintiff chose to file an appeal at Lancaster, but he failed to complete the exhaustion process.

**E.    RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that this action be DISMISSED, without prejudice, for Plaintiff's failure to exhaust the administrative remedies as to the claims presented in this action.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30)

days after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **October 27, 2015**              /s/ *Dennis L. Beck*
                                                UNITED STATES MAGISTRATE JUDGE